[Cite as *State v. Powell*, 2015-Ohio-4459.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT


| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 14AP-1054 |
| v. | : | (M.C. No. 14ERB 072191) |
| Catrice S. Powell, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |


D E C I S I O N

Rendered on October 27, 2015


*Richard C. Pfeiffer, Jr.*, City Attorney, and *Melanie R. Tobias*, for appellee.

*Brehm & Associates*, and *Eric W. Brehm*, for appellant.


APPEAL from the Franklin County Municipal Court

SADLER, J.

{¶ 1}  Defendant-appellant, Catrice S. Powell, appeals from a judgment of the Franklin County Municipal Court finding her guilty of violating R.C. 959.131(C)(2).  For the reasons that follow, the judgment of the trial court is affirmed.

I. BACKGROUND

{¶ 2}  Appellant is charged with negligently omitting care for a companion animal under R.C. 959.131(C)(2),[1] a misdemeanor of the second degree, arising from the July 13, 2014 death of a dog chained to a kennel in the yard behind appellant's apartment.  On November 7, 2014, appellant signed a waiver of trial by jury, and the case proceeded to trial before the court on November 17, 2014.  Prior to commencing the trial, the city

---

[1] The complaint originally stated R.C. 959.131(C)(1) but was amended to reflect the written description of the charge.

moved to dismiss an accompanying rabies vaccination case.  The city then produced the following witnesses.

{¶ 3}  Doctor Audra Hanthorn, a veterinarian for the Capital Area Humane Society, testified that she examined the deceased dog[2] and determined, in her medical opinion, that the dog perished from "parvo." (Tr. 11.) Dr. Hanthorn based her determination that parvo caused the dog's death on her prior experience observing dogs with parvo, the breed's high susceptibility to parvo, the dog's pale gums, the presence of hemorrhagic and bloody diarrhea, and a positive indication for parvo on a "parvo snap test" preliminary screening, which she described as "very reliable."  (Tr. 17, 21.)

{¶ 4}  According to Dr. Hanthorn, parvo is a virus that attacks a dog's rapidly dividing cells, which causes the lining of the small intestines to shed completely and can result in the dog becoming septic through a "massive" bacterial infection. (Tr. 11.) Simultaneously, parvo causes a vast reduction in white blood cells to fight the infection. As a result, the fatality rate for a dog not vaccinated or otherwise treated is "upwards of * * * 90 percent."  (Tr. 12.)  The parvo vaccine is nearly 100 percent effective, reducing the mortality rate of properly vaccinated dogs exposed to parvo to nearly zero.  Dr. Hanthorn testified that the symptoms of parvo, in general order of appearance, include lethargy, refusal to eat and drink, vomiting, weight loss, regular then bloody diarrhea, lateral recumbency (laying on its side), and weakness to the point of inability to move.  In the vast majority of cases, a lag time exists between the first signs of vomiting and bloody diarrhea, with the final stages of parvo manifesting over "at least seven [days], longer sometimes."  (Tr. 13.)  In Dr. Hanthorn's opinion, dogs in the later stage of parvo, experiencing dehydration, hemorrhagic diarrhea, and sepsis, "are absolutely suffering [and] are in a great deal of pain and discomfort."  (Tr. 22-23.)  On cross-examination, Dr. Hanthorn confirmed that parvo can progress differently, depending on the dog, and that she did not know how long this particular dog had been afflicted or suffering.  She also confirmed that she did not observe signs of physical abuse or trauma.

{¶ 5}  Ryan Evans of the Columbus Division of Police testified that he was dispatched to appellant's house after receiving a call from a neighbor concerned about the

---

[2] Unfortunately, the record does not identify the dog by name.

well-being of a dog in the yard behind appellant's apartment.  When he arrived, through the rain Evans observed a dog in a crate-type kennel located near the foot of the back stairs of an apartment.  The kennel had an "overwhelming," "rancid" smell of wet dog and feces, which he rated as a "seven" on a scale of ten.  (Tr. 34, 42.)  Evans did not observe food or water for the dog outside.  The dog was laying on its side with its eyes and mouth open and tongue hanging out; Evans thought the dog was dead.  Upon a closer look, Evans noticed the dog was breathing very slowly and flinched, but did not get up, when Evans made contact with the dog's face.

{¶ 6}   Evans knocked on the back door of the apartment, and appellant answered. He asked appellant if the dog behind her apartment belonged to her, and she answered yes.  According to Evans, appellant claimed that she did not realize the dog was sick and that the last time she checked on it, it was fine.  When Evans showed her the dog, she responded, "[t]hat's weird," and said she did not understand what happened.  (Tr. 36.) Evans stated that during this time, appellant was "[v]ery unapologetic and very unconcerned about the dog.  [S]he did not leave her stoop to come down and check on the dog when I showed it to her."  (Tr. 37.)  Appellant mentioned to Evans that the dog had run away for a couple of days and could have gotten sick during that time, and told Evans that the dog's food and water were located inside.  Evans returned to his cruiser and contacted animal control.  Appellant returned into her apartment.

{¶ 7}   After about 45 minutes, Devon Mann, a deputy warden at Franklin County Animal Care and Control, arrived and accompanied Evans to the back yard to view the dog.  Evans observed the animal and believed it had died.  They knocked on appellant's back door and told her the dog passed away, to which appellant responded "okay" and again did not leave her stoop.  (Tr. 40.)  Appellant informed Evans that a friend gave her the dog, it had just returned after being gone for five days, and she did not feel it was necessary to get the dog medicated at that time.  She told Evans that she knew she had to take the dog to the veterinarian generally, but had not had time to go.  On cross-examination, Evans agreed he was upset to see the dog in those conditions and did not like the way appellant reacted to the situation.

{¶ 8}   Mann testified that he responded to a dispatch to appellant's apartment regarding an animal in distress.  According to Mann, when he and Evans approached the

dog, it was laying on its side inside of the kennel, attached to a "tie-out" which left it little room to move around. (Tr. 59.) Mann saw the dog exhale, which he believed to be its last breath. At that point, Mann checked the dog and confirmed it had died. Although it was pouring rain at that point, Mann observed a significant amount of diarrhea and vomit in the kennel.

{¶ 9} Mann testified that he and Evans spoke with appellant, and he continued speaking with her after Evans left. In Mann's opinion, appellant did not seem very concerned the dog had died. She told Mann that she got the dog on Craig's List and did not know how it got sick, but it had recently showed up after running away for five days. "[A]t that point it was sick" and vomiting, but she "didn't think anything of it because it had gotten sick before and it had just gotten better on its own." (Tr. 56, 57.) Appellant did not check on the dog in Mann's presence. She agreed to sign an "Owner Surrender Authorization Form," allowing the dog's body to be collected by Mann. (Exhibit C, 1.) The next day, the Capital Area Humane Society retrieved the dog's body from Franklin County Animal Care and Control. On cross-examination, Mann confirmed that he had no chance to observe the dog prior to the moment he arrived, that he did not enter the apartment to see if appellant otherwise provided the dog food, water, or an interior crate, and also agreed that he was a dog lover and had empathy for the animal.

{¶ 10} Aimee Johnson, a humane agent in training and a dispatcher in cruelty investigations at the Capital Area Humane Society, testified that she accompanied another agent to appellant's apartment on July 17, 2014 to follow-up on a referral from animal control regarding the deceased dog. Johnson testified that appellant said a friend gave her the dog and advised her it was up to date on all of its shots. Appellant told Johnson that the dog was loose for about four days but returned to her house on the morning of the day it died. Appellant told Johnson that in the morning the dog appeared fine and was eating and drinking, but in the evening the dog laid down a lot and vomited. Appellant claimed that she had tried to call someone regarding the dog but did not get a chance to because the neighbors already called authorities.

{¶ 11} After admitting as evidence the owner surrender form and several photographs of the dog corpse in its kennel and at the humane society, the state rested its

case.  Appellant moved for a judgment of acquittal under Crim.R. 29(A), which the court overruled.  The defense then rested its case.

{¶ 12} The court found appellant guilty of R.C. 959.131(C)(2) and imposed a sentence of 90 days incarceration with 90 days suspended, a $100 financial sanction, and five years of probation with conditions of not owning or residing with animals and random inspections by animal control and the humane society.

## II.  ASSIGNMENTS OF ERROR

{¶ 13} Appellant submits two assignments of error for our review:

> 1. THE TRIAL COURT DID ERR BY ALLOWING THE STATE TO ADMIT EVIDENCE OF THE DEFENDANT'S PRIOR BAD ACTS.
>
> 2. THE TRIAL COURT DID ERR WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

## III.  DISCUSSION

### A.  First Assignment of Error

{¶ 14} In her first assignment of error, appellant contends that the trial court erred in permitting the prosecution, over her objection, to present "other acts" evidence under Evid.R. 404(B) through Mann's testimony that appellant did not license or vaccinate the dog for rabies.  As such, appellant asks us to vacate the judgment of the trial court and remand the case for a new trial.

{¶ 15} "[T]rial court decisions regarding the admissibility of other-acts evidence under Evid.R. 404(B) are evidentiary determinations that rest within the sound discretion of the trial court.  Appeals of such decisions are considered by an appellate court under an abuse-of-discretion standard of review."  *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 22.  " 'Abuse of discretion' has been described as including a ruling that lacks a 'sound reasoning process.' "  *Id.* at ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).  "A review under the abuse-of-discretion standard is a deferential review.  It is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the

appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments." *Id.*

{¶ 16} "As a general rule, evidence of previous or subsequent criminal acts, wholly independent of the criminal offense for which a defendant is on trial, is inadmissible." *State v. Thompson*, 66 Ohio St.2d 496, 497 (1981). In line with this general rule, Evid.R. 404(B) states: "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Still, the trial court has "broad discretion" to admit other acts evidence for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B); *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 2, 17.

{¶ 17} The Supreme Court in Ohio in *Williams* set out a three-step analysis for the trial court to consider in admitting "other acts" evidence: (1) whether the other acts evidence is relevant under Evid.R. 401; (2) whether the other acts evidence is presented to prove a permissible purpose, such as those stated in Evid.R. 404(B), rather than to prove the character of the accused in order to show activity in conformity therewith, and (3) whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice under Evid.R. 403. *Id.* at ¶ 19-20.

{¶ 18} In this case, appellee does not contest that the trial court admitted other acts evidence and does not advance an argument regarding its permissible purpose. Rather, appellee argues that appellant was not prejudiced by the prior bad acts testimony and, therefore, reversal is inappropriate here. For the following reasons, we agree with appellee.

{¶ 19} "In determining whether to grant a new trial as a result of the erroneous admission of evidence under Evid.R. 404(B), an appellate court must consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence after the tainted evidence is removed from the record." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, syllabus. *See also* Crim.R. 52(A); R.C. 2945.83. The court summarized the *Morris* analysis in the subsequent decision of *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, ¶ 37:

> [T]he following analysis was established to guide appellate courts in determining whether an error has affected the substantial rights of a defendant, thereby requiring a new trial. First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. *Id.* at ¶ 25 and 27. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. *Id.* at ¶ 28. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt. *Id.* at ¶ 29, 33.

{¶ 20} In examining the record to determine this issue, we may give weight to the fact that the error occurred in a bench trial, rather than a jury trial. *State v. Johnson*, 5th Dist. No. 2014CA00189, 2015-Ohio-3113, ¶ 91. "Indeed, a judge is presumed to consider only the relevant, material and competent evidence in arriving at a judgment, unless the contrary affirmatively appears from the record." *Id.*, citing *State v. White*, 15 Ohio St.2d 146, 151 (1968). *See also State v. Williams*, 6th Dist. No. L-11-1084, 2013-Ohio-726, ¶ 29-30, *appeal not allowed*, 135 Ohio St.3d 1461, 2013-Ohio-2285.

{¶ 21} Here, appellant points to the testimony of Mann which, in describing his interaction with appellant, states "I asked [appellant] if the dog had a current dog license or current rabies vaccination, it did not," and later continues "[w]e asked if she had ever taken the dog to a veterinarian or if it had ever had any vaccinations. She said no. We asked her if she was aware that the dog was supposed to have a dog license by law as well as rabies vaccination, she said no." (Tr. 56-57.) Appellant objected to the testimony regarding the dog license and rabies vaccination as evidence of other bad acts relating to dismissed issues irrelevant to the case at hand. Appellee responded that the evidence was not being offered to show bad acts or prove appellant had issues with vaccination or registration but was "just telling the conversation that occurred." (Tr. 57.) The court overruled both objections, stating "I see what you're saying, * * * if this were in front of a jury, I would agree [with appellant], but I'm giving it the appropriate weight." (Tr. 57.)

{¶ 22} After this exchange, no affirmative indication shows that the trial court improperly considered evidence of the lack of registering or vaccinating the dog for rabies in arriving at its judgment in this case. This evidence does not resurface again, either in appellee's closing arguments or in the trial court's reasoning in finding appellant guilty.

The trial court judge focused instead on the credibility and weight of the officers and humane society agents' observations and appellant's demeanor, as described by the officers and agents. On this record, the trial court is presumed to not have considered the evidence in arriving at a judgment. Therefore, we conclude that the error did not impact the fairness of the bench trial or verdict, and appellant was not prejudiced.

{¶ 23} Furthermore, the error was harmless beyond a reasonable doubt. Considering the facts as discussed in the second assignment of error, once the tainted evidence is excised, overwhelming evidence of appellant's guilt supports the conviction and establishes appellant's guilt beyond a reasonable doubt.

{¶ 24} Accordingly, appellant's first assignment of error is overruled.

### B.  Second Assignment of Error

{¶ 25} In her second assignment of error, appellant contends that the state presented insufficient evidence to sustain a conviction under R.C. 959.131(C)(2), and the conviction was not supported by the manifest weight of the evidence. For the following reasons, we disagree.

{¶ 26} Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law, not fact. *Id.* In determining whether the evidence is legally sufficient to support a conviction, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶ 27} In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (evaluation of witness credibility not proper on review for sufficiency of evidence);

*State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime"). Further, "the testimony of one witness, if believed by the jury, is enough to support a conviction." *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42.

{¶ 28} "Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence." *State v. McCombs*, 10th Dist. No. 15AP-245, 2015-Ohio-3848, ¶ 3, citing *Thompkins* at 387. "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *State v. Cassell,* 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 38.

{¶ 29} When presented with a manifest-weight challenge, an appellate court may not merely substitute its view for that of the trier of fact but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175.

{¶ 30} In order to find appellant guilty of negligently omitting care for a companion animal, the state had to prove beyond a reasonable doubt that she confined or was the custodian or caretaker of a companion animal that negligently omitted "any act of care by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief, against the companion animal." R.C. 959.131(C)(2). Appellant contends that the state "failed to prove there was a reasonable remedy or relief for a parvo virus infection" and, as such, her conviction was based on insufficient evidence. (Appellant's Brief, 12.)

{¶ 31} However, under R.C. 959.131(C)(2), the state was not required to prove a reasonable remedy or relief for the parvo virus infection itself. Rather, the state was required to prove appellant did not provide care which would have at least provided relief to the dog, and the failure to do so caused, permitted, or allowed unnecessary or unjustifiable pain or suffering to continue. The statute does not limit the care at issue to veterinary or medical care but expressly encompasses "any" act of care to provide a reasonable remedy or relief to the dog. The statute also is also not specific to care for dogs that are sick but generally addresses inaction that causes, permits, or allows unnecessary or unjustifiable pain or suffering, in general, to continue.

{¶ 32} To these points, the state presented evidence that the dog suffered from parvo virus, a nearly always fatal disease which causes a dog to suffer in its final stages and generally manifests symptoms over the course of at least seven days. Further, the state also showed that the dog was outside in July and in the pouring rain, while confined on a short leash without ready access to food and water and laying in a significant amount of diarrhea and vomit. The record shows that the state of the dog and its environment was readily apparent by sight and smell by the officer and deputy as they entered the yard and was apparently readily apparent to a neighbor who called for help. Viewing these facts, even if a remedy for parvo was not feasible for the dog, at the very least, appellant could have provided the dog relief from suffering in the wretched environmental state it was found in, and her failure to do so caused the dog unnecessary and unjustifiable suffering. Therefore, reviewing the record, we find the state met its burden, and the evidence in the record is sufficient to convict appellant under R.C. 959.131(C)(2).

{¶ 33} Appellant does not articulate a separate argument regarding the manifest weight of the evidence but appears to base the manifest weight challenge on the insufficiency of evidence as stated above. As we have found the evidence presented by the state to be sufficient to support the conviction, appellant's argument fails. Moreover, our own review of the record does not reveal that this is the exceptional case where the trial court judge, as trier of fact, clearly lost his way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶ 34} Accordingly, appellant's second assignment of error is overruled.

## IV.  CONCLUSION

{¶ 35} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

KLATT and BRUNNER, JJ., concur.

_____